IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CONSTRUCTORS, INC., a Nebraska corporation, and NEBCO, INC., a Nebraska corporation,

Plaintiffs,

vs.

TED C. BUTLER, an individual, et al.,

Defendants.

4:22-CV-3217

MEMORANDUM AND ORDER

This matter is before the Court on the defendants' motion to partially dismiss the plaintiff's operative amended complaint (filing 65). The Court will grant that motion in part and deny it in part.

STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## BACKGROUND

The plaintiffs—Constructors, Inc. and NEBCO Inc.—are affiliated companies that are, generally speaking, in the construction business. Filing 65 at 2. Defendant Ted Butler was a former corporate officer of both plaintiffs. Filing 65 at 2. In June 2022, Butler resigned his employment with the plaintiffs and became president of another company, General Excavating, allegedly diverting a corporate opportunity of the plaintiffs in the process. Filing 65 at 3-6. The details of that transition were set forth in the Court's previous memorandum and order (filing 27) on Butler's first motion to dismiss (filing 4), and need not be restated here. The plaintiffs sued Butler on several theories of recovery that, again, were covered in the Court's previous order. *See* filing 27.

The plaintiffs' operative amended complaint added two defendants to this case: Emily Doeschot and Zachary Vaiskunas. Filing 65 at 1. Both, according to the plaintiffs, helped Butler misappropriate confidential information from the plaintiffs before going to work for Butler at General Excavating. *See* filing 65 at 6-11.

Specifically, Doeschot was an assistant project manager for Constructors, reporting directly to Butler. Filing 65 at 6. In June 2022, she resigned and became the Vice President of Human Resources at General Excavating. Filing 65 at 6-7. But several months before that, in April 2021, Doeschot arranged a meeting between Butler and several executives of General Excavating—during the time period that the plaintiffs allege Butler was pursuing his personal interest in General Excavating, not the plaintiffs' interest. Filing 65 at 5, 7.

Several weeks before resigning, in April 2022, Butler emailed Doeschot the details of his anticipated position at General Excavating. Filing 65 at 7. Eventually, in June, Doeschot sent Butler a copy of her résumé, and the plaintiffs allege she was working for Constructors and General Excavating at the same time. Filing 65 at 7-8. And in the days before her own resignation, she took "voluminous" records from Constructors, which the plaintiffs' allege contained "confidential and proprietary information and enabled Defendants and General Excavating to be able to immediately compete against Constructors from a much more competitive standpoint than would have been possible had Defendants not had access to and, on information and belief, used Plaintiffs' confidential and proprietary information." Filing 65 at 8.

For his part, Vaiskunas was a project manager and then a Vice President of Constructors. Filing 65 at 8. He resigned a few weeks after Doeschot, in late July 2022. Filing 65 at 9. He, too, downloaded and saved business records from

Constructors in July, shortly before his departure. Filing 65 at 9-10. He, in fact, allegedly engaged in a back-and-forth email exchange with Butler in early July making sure that the plaintiffs' documents he sent to Butler (apparently also reviewed by Doeschot) using his personal email account included a certain category of proprietary information important to Butler. Filing 65 at 10-11.

The plaintiffs' operative amended complaint alleges 12 separately-denominated "claims for relief": Theft of a corporate opportunity; breach of fiduciary duty and the common-law duty of loyalty; misappropriation of trade secrets in violation of state and federal law; "constructive trust"; conversion; civil conspiracy; "aiding and abetting"; a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.; and tortious interference with a business expectancy.[1] Filing 65.

## DISCUSSION

The defendants move to dismiss the RICO claim in its entirety. But first, they ask the Court to dismiss "[a]ny claims for relief in the Amended Complaint seeking to enjoin or otherwise restrict or reduce the available employment opportunities or activities of the Defendants." Filing 75.

### INJUNCTIVE RELIEF

The defendants' first argument is strung together from several parts of the amended complaint: They put together the plaintiffs' general prayers for injunctive relief, specific prayers for prohibiting the defendants from using trade secrets or confidential information, allegations about the inevitable use of such information in competitive employment, and a prayer for a *temporary*

[1] Whether all of those are actually separate claims for relief, or even theories of recovery, is beyond the scope of this order.

injunction against the defendants' employment with General Excavating, and conclude that "[t]he injunctive relief sought by Plaintiffs is essentially a judicial order prohibiting Defendants from employment by any employer in competition with the Plaintiffs." Filing 76 at 5.

But that's a straw man. The defendants' theory about what the plaintiffs' ultimate goal is, at this point, unsupported by the pleadings.[2] And even were the straw man real, the defendants' argument is also unsupported by law: They assert that such relief would, if awarded, be an "impermissible restraint of trade" in violation of Nebraska law, relying on caselaw declaring "contracts in restraint of trade" to be "against public policy and void." Filing 76 at 5.

A court order, however, is not a contract. It is true that generally, under Nebraska law, a restrictive covenant in an employment agreement or other contract may be invalid and unenforceable as against public policy, if it's more restrictive than reasonably necessary, and that the Court must determine whether it is injurious to the public, greater than reasonably necessary to protect the employer in some legitimate interest, or unduly harsh and oppressive on the employee. *See*, *e.g.*, *Mertz v. Pharmacists Mut. Ins. Co.*, 625 N.W.2d 197, 204 (Neb. 2001); *Pro. Bus. Servs., Co. v. Rosno*, 589 N.W.2d 826, 831 (Neb. 1999). But that's based in *contract* law. *See generally Sec. Acceptance Corp. v. Brown*, 106 N.W.2d 456, 462 (Neb. 1960). The defendants offer no authority, nor is the Court aware of any, imposing the same limitations on the relief a court can award in equity.

Equity, rather, "will always strive to do complete justice." *Trieweiler v. Sears*, 689 N.W.2d 807, 836 (Neb. 2004). Where a situation exists which is

---

[2] The prayer for a temporary injunction is meaningless in the absence of a *motion* for some sort of preliminary injunctive relief pursuant to Fed. R. Civ. P. 65—which, obviously, hasn't been filed.

contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id*. at 835-36; *Anderson v. Bellino,* 658 N.W.2d 645, 658 (Neb. 2003).

Of course, while a court's power and discretion to fashion appropriate relief in an equitable action are broad, *see Denali Real Est., LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 628 (Neb. 2019), they are not unlimited. An action in equity must be founded on some recognized source of equity jurisdiction. *In re Guardianship of Maronica B.*, 992 N.W.2d 457, 462 (Neb. 2023). That, in turn, depends upon the peculiar facts disclosed by the record. *Hornig v. Martel Lift Sys., Inc.*, 606 N.W.2d 764, 771 (Neb. 2000).

Specifically, the Court must consider both its power to render a valid decree, and the propriety of granting the relief sought. *V.C. v. Casady*, 634 N.W.2d 798, 806 (Neb. 2001). The Court is unpersuaded that Nebraska contract law delimits the Court's *power* to afford equitable relief. The same considerations that weigh against covenants in restraint of trade, however, may well prove relevant in determining the *propriety* of any such relief, based on a developed record.

But we're not there yet. And there's certainly no reason, at this point, for the Court to go through the plaintiffs' pleading and strike out any prayed-for remedies that seem overly broad. The claims for relief are clearly articulated, and what the defendants are asking the Court to do has no bearing on the scope of discovery or the issues to be presented on summary judgment or at trial. What form of equitable relief might be available to the plaintiffs is a question that needs to be answered only after a trial on the merits. The Court will not decide the question before then.

RICO

Proving a RICO violation requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails. *Id.* And a civil RICO plaintiff must show injury "by reason of" a RICO violation, that is, an injury both factually and proximately caused by the violation. *Id.* That requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest. *Id.* "These requirements are not easily met." *Id.*

The defendants specifically attack the plaintiffs' allegations of a pattern of racketeering activity.

> To prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity. Continuity in this context refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. To satisfy the RICO continuity element, therefore, a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (closed-end continuity) or evidence that the alleged predicate acts threaten to extend into the future (open-ended continuity).

*Id.* at 1056 (citations and quotations omitted). A "predicate act" is one of a long list of criminal offenses found in 18 U.S.C. § 1961(1), the only relevant one of which is violation of the federal law against stealing trade secrets, 18 U.S.C. § 1832 *et seq*. So, the plaintiffs' claim depends on their allegations of misappropriating trade secrets in violation of federal law. The defendants

argue that the plaintiffs don't allege facts sufficient to establish closed-end or open-ended continuity. Filing 76 at 8-15.

The plaintiffs, somewhat curiously, respond with the following: "Nor is there a requirement that Plaintiffs prove Defendants' misappropriation [of trade secrets] occurred over a substantial period or prove such misappropriation threatens repetition in the future to establish a pattern of racketeering." Filing 77. That's curious because as just mentioned, according to the Eighth Circuit: "To prove a pattern of racketeering activity . . . a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time . . . or evidence that the alleged predicate acts threaten to extend into the future." *UMB Bank*, 89 F.4th at 1056; *accord, e.g.*, *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 823 (8th Cir. 2015); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 406 (8th Cir. 1999); *Lange v. Hocker*, 940 F.2d 359, 361 (8th Cir. 1991); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).[3]

The plaintiffs don't even seem to be arguing for open-ended continuity. *See* filing 77 at 6-8. Nor would there be any basis for such an argument, unless the plaintiffs could explain how the defendants planned to steal *more* trade secrets. So that leaves closed-end continuity—" evidence of multiple predicate acts occurring over a substantial period of time." *UMB Bank*, 89 F.4th at 1056. Closed-end continuity can usually be shown by related acts continuing over a period of time lasting at least one year. *Crest Const.*, 660 F.3d at 357.

---

[3] And contrary to the plaintiffs' suggestion, that test applies at the pleading stage. *See UMB Bank*, 89 F.4th at 1056; *Crest Const.*, 660 F.3d at 355-56; *Wisdom*, 167 F.3d at 406; *Lange*, 940 F.2d at 361-62. "Plaintiffs must allege each of these RICO elements to state a claim." *Crest Const.*, 660 F.3d at 355 (cleaned up).

But the plaintiffs' allegations of misappropriating trade secrets are focused on what Butler allegedly did in May 2022 and Doeschot and Vaiskunas were allegedly doing in June and July of 2022. *See* filing 65 at 6-11. They try to stretch that with what they allege Butler was doing a year earlier, shortly after his first meeting with officers of General Excavating:

> After the June 18, 2021 meeting, Butler began sharing Constructors' confidential business information and trade secrets with General Excavating including, but not limited to, Constructors compensation plans, profit distribution plans and paid time off plans and policies.
>
> Utilizing Plaintiffs' proprietary business acquisition formula and valuation strategies, Butler began preparing acquisition scenarios in July 2021 in which Butler would personally participate in a business opportunity involving General Excavating, at the exclusion of and with the intent to directly compete with Plaintiffs.
>
> On July 30, 2021, Butler used a NEBCO Confidentiality Agreement created and paid for by NEBCO for purposes of his self-dealing with General Excavating and to obtain information from General Excavating for his own benefit.

Filing 65 at 4-5 (enumeration omitted).

But the latter two paragraphs are too vague to support a contention that the information Butler allegedly used—even if a "trade secret"—was misappropriated in July 2021 in violation of federal law.

In deciding Butler's previous motion to dismiss, the Court found that the plaintiffs managed to plead a trade secrets claim based on their admittedly conclusory assertion that their "business plans, pricing, compensation plans, profit distribution plans, paid time off plans and policies, proprietary business acquisition formula and proprietary and conditional information for use in a covered file sharing program" were "trade secrets." Filing 27 at 11-12. The Court questioned whether all of that would meet the standard for a "trade secret," but found that "[a]t least *some* of the information the plaintiffs describe could, plausibly, meet the definition of a trade secret." Filing 27 at 12.

The Court wasn't required at that point to parse out the plaintiffs' list of purported secrets, but now it is, and the narrower list of "Constructors compensation plans, profit distribution plans and paid time off plans and policies" doesn't suffice.[4] Without more, there is no basis to infer that Constructors' employee compensation and benefit policies have independent economic value, much less derive such value from not being generally known to others who can use them. *See* § 1839(3)(B). Nor have the plaintiffs plausibly alleged *misappropriation* of their "proprietary business acquisition formula and valuation strategies" by Butler in July 2021, in the absence of any reason to believe that Butler transferred them to others or obtained them by improper means, as opposed to simply using information at his disposal for his own purposes. *See* § 1839(5) (defining "misappropriation").[5]

---

[4] It doesn't appear to the Court that the "confidentiality agreement" was alleged to be a trade secret, even if the Court understood what Butler is alleged to have done with it.

[5] It's also not evident to the Court how the plaintiffs' allegations establish a *pattern* of predicate acts. The Court recognizes that the "one year" period seems to have taken on almost mathematical significance. But "[i]f the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO

In sum, the Court finds at this point that the plaintiffs' allegations don't sufficiently establish a pattern of racketeering activity. Should discovery reveal otherwise, the plaintiffs may ask the Court to revisit this issue.

IT IS ORDERED that the defendants' motion to dismiss (filing 75) is granted in part and denied in part.

Dated this 29th day of March, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

claim." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989); *accord Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991); *see also Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1029 (8th Cir. 2008). If the alleged predicate acts occurred over more than a year, it was only by a matter of days, with a gap of several months in between. The hard one-year deadline that seems to have evolved in the caselaw seems detached from what the Supreme Court originally said in *H.J., Inc.*: a "pattern" is not formed by sporadic activity, and requires a threat of continuing activity. 492 U.S. at 239. The Supreme Court's nuanced, fact-intensive inquiry, *see id.* at 242-43, doesn't look much like a rigid test that simply asks whether two similar crimes were spaced more than a year apart. In sum, while the Court recognizes the current state of the law, what's alleged here doesn't look much like a "pattern" using the plain meaning of the word.