IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBCO, INC., a Nebraska corporation; and CONSTRUCTORS, INC., a Nebraska corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>TED C. BUTLER, an individual; EMILY DOESCHOT, an individual; and ZACHARY VAISKUNAS, an individual;<br><br>Defendants. | 4:22CV3217<br><br><br>**MEMORANDUM AND ORDER** |

Pending before the Court are two motions to compel. First, Plaintiffs Constructors, Inc. and NEBCO, Inc. ("Plaintiffs") move to compel the production of documents listed on a privilege log created by non-party James Anderson ("Anderson") by and through Forvis in response to a subpoena served upon him by Plaintiffs on May 19, 2023. Filing No. 99. In the alternative, Plaintiffs ask that the Court order Anderson to produce the documents listed on said privilege log for an *in camera* review. Filing No. 99. For the reasons set forth herein, the Court grants Plaintiffs' request for an *in camera* review and, after review of such documents, denies Filing No. 99, Plaintiffs' motion to compel the production of documents.

Also before the Court is Plaintiffs' Motion to Compel, Filing No. 123, in which Plaintiffs move the Court for an order compelling Defendant Ted C. Butler ("Butler") to respond to Requests Nos. 41 and 42. These requests relate to financial statements of General Excavating, and its parent company GE Holdings. For the reasons set forth herein, the Court grants this motion in full.

## BACKGROUND

On September 29, 2022, Plaintiffs filed a Complaint against Butler alleging a number of claims for relief relating to Butler's alleged usurpation of a business opportunity, breach of fiduciary duty, and misappropriation of trade secrets. Filing No. 1. This Court previously denied Butler's motion to dismiss in full. Filing No. 27. After that order, Plaintiffs filed an Amended Complaint, and this Court dismissed the RICO claims alleged therein. Filing No. 65.

Plaintiffs are affiliated entities and in the construction business. Filing No. 65 at p. 2. Relevant to the motion at hand, Plaintiffs allege Butler: (1) diverted a corporate opportunity away from Plaintiffs, namely the purchase of General Excavating Company ("General Excavating"), an underground utility construction company; (2) breached his fiduciary duties to Plaintiffs while a corporate officer of Plaintiffs; and (3) misappropriated confidential information from Plaintiffs prior to his employment at General Excavating. Filing No. 65. Ultimately, Butler resigned from Plaintiffs' employment on May 27, 2022. Also on this date, Butler received 100 Class B membership units of GE Holdings, LLC ("GE Holdings"). Filing Nos. 125-3 at 3, 126-3. GE Holdings is the parent company and sole member of General Excavating. Filing Nos. 126-3 at 1; 126-4 at 4. Butler's shares represented a ten percent ownership share of GE Holdings. Filing Nos. 125-3 at. 3, 126-3. In June 2022, Butler became an officer of General Excavating. Filing No. 130 at 4.

On May 1, 2023, Plaintiffs served a subpoena duces tecum on Anderson, an accountant, seeking all communications between January 1, 2021 and June

30, 2022 concerning the sale or acquisition of any assets or equity of General Excavating. Filing No. 101-1. Anderson produced certain documents on June 12, 2023, as well as a privilege log which concerns approximately 290 pages of documents. Filing No. 101-1 at 57-58. The privilege log sets forth reasons for non-disclosure which include "privilege," "confidential," and "not responsive/relevant." More specifically, Anderson asserts attorney-client privilege on behalf of Joseph T. Hausmann ("Hausmann") for multiple communications involving Anderson, and Stanton Beeder, Hausmann's attorney. *Id.* On May 21, 2024, the Court ordered Anderson to file, under seal, the documents listed in its privilege log for the Court's review. Filing No. 141. Those documents were filed on June 4, 2024. Filing No. 145.

Also in dispute are two requests for production served on Butler. The requests are as follows:

> REQUEST NO. 41: From May 1, 2022 to present produce all monthly financial statements for GE Holdings, LLC, including but not limited to profit and loss statements and balance sheets.
> REQUEST NO. 42: From May 1, 2022 to present produce all monthly financial statements for General Excavating, LLC, including but not limited to profit and loss statements and balance sheets.

Butler objected to both requests as "overly broad to the extent it seeks information that is not relevant to this litigation and disproportionate to the needs of the case." Filing No. 125-3. In response to this objection, Plaintiffs narrowed their requests to seek only the monthly profit and loss statements and balance sheets for GE Holdings and General Excavating. Filing No. 124 at 2. The Court held a discovery dispute conference on March 19, 2024 which resulted in the motion to compel found at Filing No. 123.

## ANALYSIS

1. Motion to Compel – Filing No. 99

Plaintiffs move to compel Anderson to disclose the documents described in his privilege log or, in the alternative, request the Court conduct an *in camera* review of the documents. Plaintiffs argue the documents listed on Anderson's privilege log are not privileged because: (1) the attorney-client privilege does not extend to communications in which Anderson was included because there has been no showing that these communications were made to facilitate legal advice to Hausmann Construction, Inc.; and (2) because the relevant documents were disclosed to Butler, a third party (and now defendant).

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." As set forth herein, the current dispute at issue concerns attorney-client privilege. This privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). In order for attorney-client privilege to apply, "the parties to the communication in question must bear the relationship of attorney and client," and "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1978) (en banc). The attorney-client privilege does not apply if the lawyer is not acting in his capacity as legal advisor, i.e., if a lawyer is acting as a business advisor. *United States v. Spencer,* 700 F.3d 317, 320 (8th Cir. 2012) (citations omitted).

A communication between an attorney and his client is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege

absent a clear showing to the contrary." *Diversified*, 572 F.2d at 610. A party withholding documents based upon attorney-client privilege bears the burden of proving that privilege. *Id.* at 609. Therefore, Anderson must show not only that attorney-client privilege was applicable absent a waiver, but, also, that a waiver did not occur. *Kansas-Nebraska Nat. Gas. Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 21 (D. Neb. 1983) (citing *Diversified,* 572 F.2d at 602). The court must evaluate Anderson's showing and the claim using a strict construction of privilege. *Id.*

Typically, the disclosure of attorney-client privileged information to a third party waives such privilege. However, there is an exception recognized for third parties employed to assist a lawyer in providing a client with legal advice. *See United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *United States v. Cote, 456 F2d 142* (8th Cir. 1972). For the attorney-client privilege to extend to a third-party, the communication must be made "for the purpose of obtaining legal advice from the lawyer." *Kovel,* 296 F.2d at 922. More specifically, "[i]f what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.* (internal citations omitted).

As addressed by the parties, the communications at issue are not just between an attorney and client. They include communications with Anderson, an accountant. Anderson argues the documents withheld and listed in the privilege log are attorney-client privileged because Anderson was retained by Stanton Beeder, counsel for Hausmann.[1] Filing No. 108-1 at 1. Pursuant to the evidence submitted to the Court, Beeder provided legal advice to Hausmann and his entities regarding the purchase of General Excavating. *Id.* In addition, Beeder "deemed it necessary to obtain advice from an accountant to assist [Beeder] in understanding

---

[1] Beeder's affidavit provides that he is counsel for "Joseph T. Hausmann, along with his entities, principals and key executives associated with those endeavors." Filing No. 108-1.

accounting principles at issue in the potential acquisition, such as the taxation-related issues presented" and, as such, retained Anderson for such purpose. *Id.* at 1–2. This is supported by Anderson's deposition in which the following exchange occurred:

> Q. Did you view your role on the Hausmann/GE acquisition as being there to assist Stan Beeder in rendering legal advice?
>
> A. To the extent that it would help him understand the tax pieces of any agreement they entered into, that would have been a blind spot for him and so that would have been my role.
>
> Q. Okay. Tax only?
>
> A. Mainly tax, yes.
>
> Q. Anything else?
>
> A. Just in – I mean, I would say tax only.

Filing No. 101-2 at 11.

The undersigned is also presented with the testimony of Anderson in which Anderson testifies he was representing "Hausmann Companies or one of Joey's companies. Maybe Hausmann Construction." Filing No. 101-2 at 10. Plaintiffs rely on Anderson's testimony to this effect to discredit Beeder's affidavit which indicates that Beeder retained Anderson, not Hausmann or his entities. Though the undersigned recognizes the distinction, the undersigned finds that, under the circumstances as a whole, this is not the inaccuracy Plaintiff contends. The evidence indicates that Beeder is not only counsel for Joseph Hausman, but also counsel for his entities, including Hausmann Construction. Filing No. 108-1. The fact that Anderson did not testify he was specifically retained by Beeder is not enough to discredit Beeder's affidavit under the totality of the circumstances and evidence presented.

The Court finds, based on the evidence before it, that attorney-client privilege extends to the communications between Anderson and Beeder. *See Marathon Oil Co.,* 109 F.R.D. at 20 (finding communications with experts and consultants hired by the client were necessary to facilitate legal discussion and therefore, protected by attorney-client privilege); *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 628-29 (E.D. Tex. 1998) (finding attorney-client privilege can extend to communications to a client-retained accountant when the accountant's services are necessary or highly useful to an effective consultation between client and lawyer); *U.S. v. Cote*, 456 F.2d 142, 144 (8th Cir. 1972) (privilege can extend to an expert consultant such as an accountant or a foreign language interpreter retained by an attorney to assist him or her in understanding information on which the attorney has been asked to render legal advice).

The undersigned reviewed the emails withheld by Anderson *in camera* consistent with the above analysis. Given the manner in which the privilege log was created, it is difficult to concisely identify the documents associated with the relevant analysis. Therefore, the Court labeled the privilege log rows 1–28 for purposes of identification. *See* Attachment A. Anderson marks the following rows privileged: 1–9, 19–22. Additionally, rows 25–28 are listed as attachments to an email designated as privileged. For the reasons discussed below, the Court finds that the documents in rows 1-–9 and 25–28 are protected by the attorney-client privilege.

The documents in rows 5–9 are subject to attorney-client privilege. The documents in rows 5–6 clearly set forth legal advice from Beeder. Documents in rows 7–9 are the attachments to those emails.[2] The only individuals involved in

---

[2] The Court's finding regarding any attachments to an email it finds is protected by the attorney-client privilege is based solely upon the language of the subpoena which requested the production of "communications" and the fact that the attachments are a part of the communications. The court declines to reach a conclusion as to whether the

these email communications are Beeder, Anderson, Hausmann, and Kim Keller, the Chief Financial Officer for Hausmann Construction (one of the Hausmann entities).[3] As addressed earlier, Anderson illustrates he was retained to assist Beeder in providing Hausmann and his entities legal advice. After review of the documents, the Court finds Anderson has demonstrated the aforementioned documents satisfy the elements of the privilege and met his burden. Anderson does not need to disclose these documents.

The undersigned finds the documents in rows 1-4 and 25–28 are also subject to attorney-client privilege. Though the communications are not directly between Beeder and Anderson, these communications involve relaying information either from Beeder to Anderson or Anderson to Beeder that are relevant to the role in which Beeder indicates he retained Anderson and in which Anderson indicates he was representing "Hausmann Companies or one of Joey's companies. Maybe Hausmann Construction." These types of communications are contemplated by *Kovel*, and the communications were made to facilitate obtaining legal advice even though the information was simply being relayed.[4] See *Moore v. Compass Grp. USA, Inc.*, No. 4:18-CV-01962, 2022 WL 1471351, at *2 (E.D. Mo.

---

attachments on their own would fall under any independent privilege as the aforementioned finding is dispositive for the issue at hand since "communications" were the only information requested in the subpoena at issue. The Court also notes that the documents indicating "unknowns" were attachments to emails, not emails themselves.

[3] The Court notes the scope of the legal advice provided by Beeder was appropriately directed to both Hausmann and Keller. See *Commodity Futures Trading Com'n v. Weintrab*, 471 U.S. 343, 348 (1985) (holding attorney-client privilege for a corporation does not only cover communications between counsel and top management but also communications between counsel and lower-level employees).

[4] Plaintiffs cite *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) (finding the analysis in *Kovel* did not apply because the third-party advisor in question was merely the source of factual information) in support of their position. However, this Court finds these cases distinguishable as the evidence before the Court does not indicate Anderson was the source of factual information in the transaction at hand.

May 10, 2022) (attorney-client privilege extends to communications between non-attorney employees made to obtain or relay legal advice*); Hudock v. LG Elecs. U.S.A., Inc.*, No. 0:16-CV-1220, 2019 WL 5692290, at *3 (D. Minn. Nov. 4, 2019) (same); *Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *4 (S.D. Ohio Aug. 22, 2019) (same).

Plaintiffs also argue that, to the extent attorney-client privilege attached, that privilege was waived through the disclosure to a third party. *See Yielding*, 657 F.3d at 707 (This privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client."); *see also United States v. Hyles*, 479 F.3d 958, 971 (8th Cir. 2007). Plaintiffs argue Hausmann waived attorney-client privilege to the documents, to the extent it existed, because the communications were disclosed to Butler, and Anderson was "simultaneously providing services to both Joey Hausmann and Butler in connection with the acquisition of General Excavating." Filing No. 100 at 7. In support of this argument, Plaintiffs point to text messages between Butler, Hausmann and Anderson which purport to show Anderson providing services to both Hausmann and Butler in connection with the acquisition of General Excavating.

Though these text messages illustrate there were communications between Butler, Hausmann, and Anderson, there is no indication that the documents withheld in the privilege log were disclosed to Butler as part of these communications.[5] Rather, Butler is not a party to any of the communications listed on the privilege log. *See* Attachment A. Any waiver of privilege only covers

---

[5] In their Reply Brief, Plaintiffs identify documents on the privilege log they believe were attached to non-privileged documents that were already produced. Filing No. 109 at 5-6. However, upon review of the evidence provided by Plaintiffs and the documents *in camera*, the information received by the Court does not indicate the communications Plaintiffs argue have been disclosed have, in fact, been disclosed.

9

information which was actually disclosed. *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). Plaintiff's waiver argument is unavailing.

Finally, it is unclear whether Plaintiffs are requesting all of the documents listed in the privilege log or only those designated as privileged. For the sake of completeness, the Court has reviewed each document produced in the privilege log as well as the propriety of the reason for non-disclosure. Given that the reason for non-disclosure was made in the privilege log, the Court analyzes these statements as objections pursuant to Fed. R. Civ. P. 45(d)(2)(B).

Anderson labeled documents in the privilege log as "not responsive/relevant" as the basis for non-disclosure. The Court has reviewed the documents labelled as irrelevant, which are at rows 10 to 18. The documents associated with these rows, upon review, do not appear related to Hausmann or the acquisition of General Excavating but, instead concern projects unrelated to General Excavating. Plaintiff's subpoena does not request communications regarding transactions outside of the acquisition of General Excavating. Filing No. 101-1. These do not need to be produced.

Lastly, Anderson indicates the documents set forth in rows 23 and 24 are "Confidential." Though the Court is unaware of the basis for the confidential designation (the undersigned is not opining these are or are not confidential), what is clear is that the documents set forth in rows 23 and 24 are not communications responsive to the subpoena at hand. Accordingly, the undersigned does not find the documents in these rows need to be produced.[6]

2. Motion to Compel –Filing No. 123

Plaintiffs move to compel Butler to respond to request for production Nos. 41 and 42 which relate to financial statements of General Excavating, and its

---

[6] The Court also notes Plaintiffs only brief the attorney-client privilege objection, not confidentiality.

parent company GE Holdings. Plaintiffs argue that the financial information requested is necessary to calculate damages for its claims for theft of corporate opportunity, breach of fiduciary duty, and misappropriation of trade secrets. Filing No. 124.

Pursuant to Fed. R. Civ. P. 26(b)(1), the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In order to determine whether a matter is discoverable, the court must first determine whether the discovery is relevant to a claim. Relevancy is to be broadly construed for discovery issues and, further, is "any matter that could bear on, or that reasonably could lead to [an]other matter that could bear on, any issue that is or may be in the case." *NuTone, Inc. v. Jakel*, Inc. 2009 WL 1974441 at *2 (D. Neb. July 6, 2009). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Once the requesting party makes a threshold showing of relevance, the burden shifts to the party resisting discovery to show his objections are valid. *Allstate Ins. Co. v. Hewlett-Packard Co.*, No. 8:08CV39, 2010 WL 2813659, at *2 (D. Neb. July 16, 2010).

The Court considers the evidence presented by the parties in determining whether the requested documents are relevant, and therefore, discoverable under

Fed. R. Civ. P. 26.[7] Plaintiffs argue the financial statements are relevant to multiple claims, but the Court finds it unnecessary to reach each argument. Rather, Plaintiff has made a threshold showing that the financial statements are relevant to their claim for theft of corporate opportunity, and the documents are discoverable.

Pursuant to Nebraska law, a director or other corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or dealing individually with third persons. Trieweiler v. Sears, 689 N.W.2d 807, 839 (Neb. 2004); see also Malone v. Kanter, 2015 WL 5156861 at *14 (D. Neb. Sept. 2, 2015). As such, the doctrine of corporate opportunity prohibits an individual who occupies a fiduciary relationship to a corporation from acquiring, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy. Trieweiler, 689 N.W.2d at 839. If successful on a claim for theft of corporate opportunity a plaintiff "may recover the value of any corporate opportunity that was diverted from it, regardless of who else may have profited." Id. at 839.

Plaintiffs have pointed to evidence that allegedly shows that Butler, while acting as an officer of Plaintiffs and with knowledge of Plaintiff's interest in the acquisition, pursued the opportunity to acquire General Excavating for his own benefit (Butler ultimately did obtain an ownership interest via GE Holdings), and, that his actions may have discouraged General Excavating from presenting the opportunity to Plaintiffs. See Filing No. 125-1 at 3–4 (Butler was the "lead" in

---

[7] Both parties submit substantial evidence to support their claims and defenses to the claims alleged against Butler. The undersigned is not making any findings or conclusions as to the sufficiency of this evidence for anything other than the discovery dispute at issue. The relevant determination for discoverability is different than findings regarding the sufficiency of claims at other stages in litigation. As such, the undersigned wants to make clear that any findings herein are for determining whether the documents at issue are discoverable pursuant to Fed. R. Civ. P. 26.

determining whether Plaintiffs could pursue a purchase of General Excavating and never reported back regarding the opportunity); Filing No. 125-4 at 10, 12 (same); Filing No. 125-3 at 3 (Butler ultimately obtained a 10% ownership interest in GE Holdings); Filing No. 125-5 at 29 (Butler attempted to purchase General Excavating himself); Filing No. 125-5 at 36-37 (Butler discouraged General Excavating from presenting the opportunity to Plaintiff); Filing No. 125-6 at 7–8 (Butler discovered General Excavating was considering a sale while employed with Plaintiffs); Filing No. 126-1 at 14–15 (Plaintiffs discussed acquiring an underground utility company and the acquisition could have provided an advantage to Plaintiffs); Filing No.139-1 at 9–12 (same).

Plaintiffs also point to evidence suggesting a nexus between Butler, Hausmann, and D'Amico during the time relevant to Hausmann's acquisition of General Excavating and ownership interest in GE Holdings (the parent company and sole member of General Excavating), a portion of which was ultimately provided to Butler. *See* Filing Nos. 125-5 at 30 (D'Amico deposition transcript discussing Butler's interest in General Excavating and the ultimate sale to Hausmann); 125-15 (Butler call logs illustrating call with Hausmann on the same day that Hausmann approached D'Amico); 125-13 (April 15, 2022 letter of intent with General Excavating). The discovery requests at issue directly relate to potential damages on this claim, i.e., "the value of any corporate opportunity that was diverted from it, regardless of who else may have profited." *Trieweiler*, 689 N.W.2d at 839. Therefore, the Court finds the documents relevant.

Butler's primary argument regarding the theft of corporate opportunity claim is that Butler's arrangement with General Excavating was "unique to him" and, as such, there was no opportunity Butler usurped that could have been acquired by Plaintiffs. Filing No. 136. Said another way, Butler is arguing that, because Butler received a percent ownership in General Excavating in exchange for his employment at General Excavating, Plaintiffs could have never obtained that

13

percent interest because Plaintiffs would not have been able to provide the employment services provided by Butler. But this argument goes to the viability of Plaintiff's claim and was previously dispelled by the Court. Filing No. 27 at 8 ("the fact that Butler didn't take the entire opportunity for himself doesn't default the plaintiffs' claim of usurpation.").

Moreover, Butler does not argue there is significant burden or expense associated with producing the relevant documents. After Plaintiff made a threshold showing of relevance, the burden shifted to Butler to show his objections are valid. He has not overcome his burden. Accordingly, the undersigned finds that producing the limited scope of documents, as agreed to by Plaintiffs, is not disproportionate to the critical necessity for the discovery at issue. An analysis of the evidence submitted in support of each party's position on this discovery issue, as well as the other factors set forth in Fed. R. Civ. P. 26(b)(1) does not indicate that requiring Butler to produce the monthly profit and loss statements and balance sheets for GE Holdings and General Excavating runs afoul Fed. R. Civ. P. 26(b)(1).

IT IS SO ORDERED:

1. Plaintiffs' Motion to Compel, Filing No. 99, is denied.
2. Plaintiffs' Motion to Compel, Filing No. 123, is granted.
3. Defendant Butler shall produce the monthly profit and loss statements and balance sheets for GE Holdings and General Excavating, as responsive to Requests Nos. 41 and 42 by August 8, 2024.

Dated this 25th day of July, 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge