IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBCO, INC., a Nebraska corporation; and CONSTRUCTORS, INC., a Nebraska corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>TED C. BUTLER, an individual; EMILY DOESCHOT, an individual; and ZACHARY VAISKUNAS, an individual;<br><br>Defendants. | 4:22CV3217<br><br>MEMORANDUM AND ORDER |

Now pending before the Court is Plaintiffs' motion to compel, Filing No. 147, as well as Plaintiffs' unopposed motion to stay the final progression order, Filing No. 163, pending a ruling on the motion to compel. Plaintiffs move to compel Defendant Zachary J. Vaiskunas ("Vaiskunas") to produce and make available for forensic inspection three external storage devices that are responsive to Plaintiffs' Requests for Production Nos. 26 and 27.

## BACKGROUND

Plaintiffs are affiliated companies that are in the construction business. A summary of Plaintiffs' claims against Defendant Butler are set forth in the undersigned's July 25, 2024 Order. Filing No. 162. The current dispute relates to Defendant Vaiskunas.

Pursuant to the Amended Complaint, Vaiskunas resigned as Vice President of Plaintiff Constructors, Inc. ("Constructors") in July 2022. Plaintiffs allege Vaiskunas downloaded and saved business records from Constructors in July 2022, shortly before his departure. Filing No. 65 at 9–10. Plaintiffs also allege Vaiskunas complied with co-Defendant Butler's requests to send Butler specific proprietary information about Plaintiffs' operations. Filing No. 65 at 10–11.

Plaintiffs allege the following claims against Vaiskunas: breach of fiduciary duty, breach of common law duty of loyalty, misappropriation of trade secrets pursuant to

1

Nebraska law and 18 U.S.C. § 1836, conversion, conspiracy, aiding and abetting, unjust enrichment, and tortious interference with a business relationship. Filing Nos. 65 and 121.

In dispute are two requests for production served upon Vaiskunas. The requests, original responses, and supplemental responses are as follows:

> REQUEST NO. 26: Produce each physical USB, memory card, or other portable storage device that you utilized on any computer owned by Plaintiffs between January 1, 2021 through the present.
>
> RESPONSE: Defendant objects to Request No. 26 for the reason that it is overly broad to the extent it seeks production that is not relevant to this litigation and disproportionate to the needs of the case.
>
> SUPPLEMENTAL RESPONSE: Defendant supplements his response above and in response to Plaintiffs' letter dated April 17, 2024 that he agrees to identify any thing [sic] responsive to Request No. 26 and provide a screen shot of the index of files contained thereon.
>
> REQUEST NO. 27: Produce each physical USB, memory card, or other portable storage device that you utilized on any computer between January 1, 2021 and the present that has ever contained: Plaintiffs' data or information; [sic]
>
>    a. Plaintiffs' data or information;
>    b. Plaintiffs' historical cost information; or
>    c. Data or information related to Operation Billy Ray.
>
> RESPONSE: Defendant objects to Request No. 27 for the reason that it is overly broad to the extent it seeks production that is not relevant to this litigation and disproportionate to the needs of the case.
>
> SUPPLEMENTAL RESPONSE: Defendant supplements his response above and states that he has conducted a search for any thing [sic] responsive to Request No. 27 and no responsive thing exists.

The Court held a discovery conference on June 3, 2024 and Plaintiffs subsequently filed the instant motion to compel. Throughout the course of this discovery dispute, Plaintiffs narrowed Request Nos. 26 and 27 to the three storage devices their forensic expert identified Vaiskunas had used on his work-issued laptop in July 2022. The Court limits its analysis to these devices.

**ANALYSIS**

I.      **Motion to Compel.**

Pursuant to Fed. R. Civ. P. 26(b)(1), the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

To determine whether a matter is discoverable, the Court must first determine whether the discovery is relevant to a claim. Relevancy is to be broadly construed for discovery issues and, further, is "any matter that could bear on, or that reasonably could lead to [an]other matter that could bear on," any issue that is or may be in the case. *NuTone, Inc. v. Jakel, Inc.*, No. 8:07CV305, 2009 WL 1974441, at *2 (D. Neb. July 6, 2009) (quoting citation omitted). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Once the requesting party makes a threshold showing of relevance, the burden shifts to the party resisting discovery to show their objections are valid. *Allstate Ins. Co. v. Hewlett-Packard Co.*, No. 8:08CV39, 2010 WL 2813659, at *2 (D. Neb. July 16, 2010).

Plaintiffs argue the three devices are relevant to their breach of fiduciary duty, breach of common law duty of loyalty, misappropriation of trade secrets pursuant to Nebraska law and 18 U.S.C. § 1836, and conversion claims against Vaiskunas. They argue this discovery is necessary to determine whether Vaiskunas transferred files from his work-issued laptop, what files were transferred (if any), and whether such files have since been deleted. Vaiskunas, on the other hand, argues an inspection of the three devices is overbroad because the devices contain personal information unrelated to the present lawsuit and he has already confirmed he did not transfer documents as alleged.

3

Fed R. Civ. P. 34(a)(1)(A) allows a party to serve on another party a request "within the scope of Rule 26(b)" to permit inspection of "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained . . ." However, "Rule 34(a) does not give the requesting party the right to search through all of the responding party's records." *TK Elevator Corp. v. Abels*, No. 4:21CV3116, 2022 WL 17551765, at *10 (D. Neb. Dec. 9, 2022) (citing *In re Ford Motor Co.*, 345 F.3d 1315, 1316–17 (11th Cir. 2003)).

"[G]ranting a forensic inspection of an opponent's electronic storage device 'is highly intrusive.'" *TK Elevator Corp.*, No. 4:21CV3116, 2022 WL 17551765, at *10 (citing *A.M. Castle & Co v. Byrne*, 123 F.Supp.3d 895, 900 (S.D. Tex. 2015)). "[S]kepticism concerning whether a party has produced all responsive, non-privileged material from the target electronic devices is not a sufficient reason, standing alone, to warrant production of the hard drives." *Id.* "Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." *Balboa Threadworks, Inc. v. Stucky*, No. 05–1157, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006).

Nonetheless, there are times when inspections of this nature are justified, "especially in cases where the device itself and the possible discovery of electronic data about its use is relevant to the claims and defenses in the suit," namely, claims involving misappropriation of a trade secret. *TK Elevator Corp.*, No. 4:21CV3116, 2022 WL 17551765, at *10; *see also IsoNova Tech. LLC v. OvaInnovations, LLC*, No. 20-CV-71, 2021 WL 7185227 (N.D. Iowa July 28, 2021). Moreover, when "there are discrepancies or inconsistencies in the responding party's discovery responses, a court may allow an expert to examine a mirror image of the party's hard drives." *TK Elevator Corp.*, No. 4:21CV3116, 2022 WL 17551765, at *10 (quoting citation omitted).

Plaintiffs' primary argument supporting this inspection is that Vaiskunas, in the months leading up to his final day of employment with Constructors, may have accessed and stored confidential information on three storage devices. In support of this argument,

4

Plaintiffs submitted the affidavit of expert Johnathan Edwards, who performed a forensic examination of Vaiskunas' work-issued laptop. During this investigation, Edwards discovered three specific storage devices had been connected to Vaiskunas' work-issued laptop. These included:

(1) a Seagate BUP Slim BL storage device ("Seagate USB") that was connected to Vaiskunas' laptop over 50 times between October 4, 2021 and July 27, 2022. More specifically, Edwards' examination of Vaiskunas' laptop indicates that, on July 27, 2022 (his final day of employment), approximately 1,571 "files" were moved or staged to be moved from Vaiskunas' laptop.

(2) a general USB flash disk that was connected and disconnected to Vaiskunas' laptop on July 12, 2022 at least two times and connected to his laptop again on July 27, 2022.

(3) a storage device that was connected to Vaiskunas' laptop one time on July 12, 2022.

It is clear Plaintiffs are looking for one thing—whether any documents were transferred from Vaiskunas' work-issued laptop to any of the aforementioned devices on or before July 27, 2022 which would support a number of its claims against Vaiskunas. Plaintiffs have fulfilled their threshold showing of relevance. Specifically, the fact that 1,571 "files" were moved or staged to be moved from Vaiskunas' laptop on his final day of employment at Constructors goes directly to the misappropriation claims alleged against him. Therefore, the burden shifts to Vaiskunas to show his overbreadth objections are valid.[1]

In response to Plaintiffs' arguments, Defendant produced evidence indicating certain examinations of Vaiskunas' work-issued laptop could confirm, without a search of

---

[1] Edwards' Amended Affidavit indicates that, "[w]ithout access to the three devices listed above that were plugged into Vaiskunas' Constructors, Inc. laptop, [he is] unable to conclude the identity or content of the documents that were moved or staged to be moved from Vaiskunas' laptop to the three devices. Further, without access to the devices, [he] cannot conclude whether the documents were actually moved or merely staged to be moved." Filing No. 149-2. This evidence cuts both ways. It supports Plaintiffs' need for a search of the storage devices, to the extent any documents were transferred. However, it also supports Vaiskunas' argument that Plaintiffs have not fully supported their conclusion that the storage devices in question contain information relevant to the claims, especially with the new evidence before the Court.

the storage devices in question, whether documents were transferred from the work-issued laptop to a storage device during the time frame in question. Filing No. 158-1 at 3–5 ("A review of all user activity on the Vaiskunas Laptop, including files and folders accessed around the time of the USB connection, would provide additional information regarding what occurred before, during and after that device connection."); ("A review of these file access artifacts . . . should yield names for the 1,571 items that were reportedly accessed . . ."); ("[A] forensic analysis of the Vaiskunas Laptop would identify any evidence, or lack thereof, regarding 'a quick transfer of data' involving the 'General USB Flash Disk'"). This information was not before the Court at the June 3 discovery conference.

In addition, Plaintiff produced screenshots of the contents of the Seagate USB. Upon review, there are documents that pre-date his employment with Constructors and, as such, have no relevance to any party's claim or defense. Moreover, among the information on the Seagate USB are documents entitled "Zvaiskunas Resume," "2019 Life Insurance," "Address Book," "Recipes," "ZVaiskunas Physical – 5-29-19," as well as folders entitled "Family Pictures," "Iphone Pictures," "Personal Stuff," and "Taxes." *See* Filing No. 158 at 14–16. Though the undersigned recognizes these file names may not be indicative of what the files actually are (or what may have been previously deleted and/or removed from the storage devices), this does suggest a search of the entire storage devices in question may be overly broad and not proportional to the issues set forth in the case. Given the evidence provided by Vaiskunas, there is a high likelihood that a forensic inspection of these devices would contain irrelevant documents, documents outside the scope of Rule 26 and, further, is overly intrusive at this stage of the proceedings. This is especially true considering Defendants' expert's affidavit indicates a less intrusive alternative exists. *See* Filing No. 158-1.

Nonetheless, the undersigned has been presented with evidence indicating a more limited search is justified. In Vaiskunas' Answers to Requests for Admissions, he denies that "on [his] last day of employment with Plaintiffs in July 2022, [he] transferred documents from [his] work laptop to an external electronic storage device" and denies he has or had "possession, custody, or control of copies of Plaintiffs' cost reports or cost summaries after [his] employment with Plaintiffs ended." Filing No. 158 at 36, 38.

Vaiskunas has represented he performed a search of the relevant device(s) (that he has been able to locate) and provided any responsive documents. However, Plaintiffs have produced evidence which calls the credibility of these statements into question—namely the moving, or staging of over 1,500 files to be moved, on Vaiskunas' final day of employment.

Based on the foregoing, the undersigned will not require Vaiskunas to turn over these three storage devices[2] or to allow a mirror-image forensic search of the documents within them at this time. Considering the evidence now before the Court, a mirror-image search of the storage devices in question is outside the scope of Rule 26, at least until a less intrusive search method has been explored. Accordingly, the Court will deny Plaintiffs' motion in part and grant it in part, as set forth below.

The parties are ordered to meet and confer (presumably with the help of their respective experts) as soon as feasibly possible. The parties shall, in good faith, attempt to develop a process to determine whether any files were transferred from Vaiskunas' work-issued laptop to a storage device between October 4, 2021 and July 27, 2022. If this exercise results in the parties determining files were transferred from Vaiskunas' work-issued laptop to a storage device, the parties are further ordered to meet and confer again to determine whether the transferred documents are relevant to the claims at issue. Finally, if the parties discover they cannot determine the content of any files transferred, they are ordered to meet and confer a third time to design a protocol to search the storage devices in question.

The parties are ordered to contact the undersigned if the parties: (1) encounter issues meeting and conferring; (2) cannot agree to the proposed protocol for performing the analysis on the work-issued laptop; and/or (3) after meeting and conferring, one or both parties believe there is still a need to inspect the storage devices at issue. The undersigned will then schedule a second discovery conference. All potential disputes are subject to the motion to compel deadline in the Court's final progression order.

---

[2] It appears from the briefing that the Seagate USB has been located. However, it does not appear the other two storage devices at issue have been located by Defendant. To the extent that is the case, a party cannot produce what it does not have (and or is unable to locate after a reasonable search).

II. **Motion to Stay Deadlines in the Final Progression Order.**

Also before the Court is Plaintiffs' unopposed motion to stay the deadlines in the final progression order. Filing No. 163. Since the Court has now ruled on the motion to compel, Filing No. 163 is denied as moot. The parties are ordered, however, to confer and submit proposed case progression deadlines to chambers on or before September 2, 2024.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED as follows:

1. Plaintiffs' Motion to Compel, Filing No. 147, is granted in part and denied in part. The parties are ordered to meet and confer as detailed herein.
2. Plaintiffs' Unopposed Motion to Stay Third Amended Progression Order, Filing No. 163, is denied as moot. The parties are ordered to confer and submit proposed case progression deadlines to chambers (deluca@ned.uscourts.gov) on or before September 2, 2024.

Dated this 23rd day of August, 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge